602 So.2d 1170 (1992)
Gregory Montecarlo JONES
v.
STATE of Mississippi.
No. 03-DP-601.
Supreme Court of Mississippi.
June 10, 1992.
Rehearing Denied July 22, 1992.
*1171 Kenneth J. Rose, Durham, N.C., James W. Craig, Jackson, Donald B. Verrilli, Jr., Carl S. Nadler, Jenner & Block, Mark D. Schneider, Washington, D.C., Charles G. Curtis, Jr., Foley & Lardner, Madison, Wis., for appellant.
Michael C. Moore, Atty. Gen., Marvin L. White, Jr., Asst. Atty. Gen., Charlene R. Pierce, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
SULLIVAN, Justice, for the Court:
This case is before this Court on remand from the United States Supreme Court for reconsideration in light of Maynard v. Cartwright, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988) and Thompson v. Oklahoma, 487 U.S. 815, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988). See Jones v. Mississippi, 487 U.S. 1230, 108 S.Ct. 2891, 101 L.Ed.2d 925 (1988). This Court affirmed Jones' conviction and sentence of death in Jones v. State, 517 So.2d 1295 (Miss. 1987), after reversing and remanding the conviction and sentence of the first trial. Jones v. State, 461 So.2d 686 (Miss. 1984).

*1172 I. THE MAYNARD v. CARTWRIGHT ISSUE
At issue under Maynard v. Cartwright is the aggravating circumstance "especially heinous, atrocious, or cruel." At Jones' trial, the jury was allowed to consider this aggravating circumstance along with two others, "engaged in the commission of a robbery" and "committed for pecuniary gain." Jones, 517 So.2d at 1300. There was no limiting instruction given in conjunction with the "especially heinous, atrocious, or cruel" aggravating circumstance, although one was offered by the defendant but denied by the trial court.
The jury found all three aggravating circumstances and found insufficient mitigating circumstances to outweigh the aggravating circumstances. Under Maynard v. Cartwright, 486 U.S. at 364, 108 S.Ct. at 1859, 100 L.Ed.2d at 382, the aggravating circumstance "especially heinous, atrocious, or cruel" without a limiting instruction is unconstitutionally vague. Therefore, in Jones' case, this aggravating circumstance is invalid, leaving this Court in the position of having to determine whether in the face of an invalid aggravating circumstance Jones' death sentence can nonetheless be upheld by this Court or if the case must be remanded for resentencing.
Subsequent to remand of Jones, the United States Supreme Court granted certiorari review in Clemons v. State, 535 So.2d 1354 (Miss. 1988), on the issue of whether or not this Court properly upheld the sentence of death in light of its finding that one of the two aggravating circumstances, "especially heinous, atrocious or cruel," was invalid, pursuant to Maynard v. Cartwright. Since the United States Supreme Court's decision in Clemons v. Mississippi, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), we have decided, upon remand by United States Supreme Court, both Clemons v. State, 593 So.2d 1004 (Miss. 1992), and Shell v. State, 595 So.2d 1323 (Miss. 1992). These decisions control our decision today in Jones on this issue.

A. Reweighing

In Clemons v. Mississippi, the United States Supreme Court held:
Although we hold that the Federal Constitution does not prevent a state appellate court from upholding a death sentence that is based in part on an invalid or improperly defined aggravating circumstance either by reweighing of the aggravating and mitigating evidence or by harmless error review, we vacate the judgment below and remand, because it is unclear whether the Mississippi Supreme Court correctly employed either of these methods.
494 U.S. 738, 741, 110 S.Ct. 1441, 1444, 108 L.Ed.2d 725, 733 (1990). Thus, the United States Supreme Court settled the question from a federal constitutional standpoint of a state appellate court's ability to reweigh aggravating and mitigating circumstances in order to uphold a death sentence based in part on an invalid or improperly defined aggravating circumstance. It has delineated, both in Clemons and in Parker v. Dugger, ___ U.S. ___, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991), the process by which appellate courts must arrive at such a decision.
However, considering this question as a matter of state law, we held in our decision in Clemons v. State that
only the jury, by unanimous decision, can impose the death penalty; as to aggravating circumstances, this Court only has the authority to determine whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance. There is no authority for this Court to reweigh remaining aggravating circumstances when it finds one or more to be invalid or improperly defined, nor is there authority for this Court to find evidence to support a proper definition of an aggravating circumstance in order to uphold a death sentence by reweighing. Finding aggravating and mitigating circumstances, weighing them, and ultimately imposing a death sentence are, by statute, left to a properly instructed jury. *1173 Clemons, 593 So.2d at 1006. We reiterated this holding in Shell v. State, 595 So.2d at 1324. In light of Clemons and Shell, we again hold that as a matter of state law, we have no authority to uphold a death sentence in the light of an invalid or improperly defined aggravating circumstance by reweighing remaining aggravating circumstances. Neither is there authority for this Court to find evidence to support a proper definition of an aggravating circumstance in order to uphold a death sentence by reweighing.

B. Harmless Error Analysis

The United States Supreme Court's Clemons' opinion suggests that even if reweighing were not an appellate function, "it was open to the Mississippi Supreme Court to find that the error which occurred during the sentencing proceeding was harmless," relying on Satterwhite v. Texas, 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988). Clemons v. Mississippi, 494 U.S. at 752, 110 S.Ct. at 1450, 108 L.Ed.2d at 741.
In Jones' case, it is difficult to accept that beyond a reasonable doubt the jury's sentencing verdict would have been the same with or without the "especially heinous" factor. This factor was argued almost exclusively to the jury as a reason to impose the death penalty. As in Clemons, 593 So.2d at 1007; Shell, 595 So.2d at 1325; and Johnson v. State, 547 So.2d 59 (Miss. 1989), there is no way to throw out this aggravating circumstance and say with any confidence that the jury verdict would have been the same.
However, the United States Supreme Court did leave open the possibility that this Court could "ask whether beyond reasonable doubt the result would have been the same had the especially heinous aggravating circumstance been properly defined in the jury instructions; and perhaps on this basis it could have determined that the failure to instruct properly was harmless error." Clemons, 494 U.S. at 754, 110 S.Ct. at 1451, 108 L.Ed.2d at 742. This statement indicates that this Court could apply its construction of the "especially heinous" factor adopted in Coleman v. State, 378 So.2d 640 (Miss. 1979), to the facts of this case to determine if, with the narrowed definition, the jury verdict would have been the same. If we so found, we could perhaps find that failure to properly instruct the jury was harmless error.
We are not convinced beyond a reasonable doubt that under the facts of this case a jury would have found that "the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital felonies  the conscienceless or pitiless crime which is unnecessarily torturous to the victim." Coleman, 378 So.2d at 648.
Because we have no authority as a matter of state law to engage in a reweighing analysis, and because under the facts of this case we eschew harmless error analysis, we hold that it is for a jury, rather than this Court, to decide under the facts of this case and with proper and properly defined aggravating circumstances, weighed against mitigating circumstances, whether Jones shall be sentenced to death or life imprisonment.

II. THE THOMPSON v. OKLAHOMA ISSUE
In Thompson v. Oklahoma, 487 U.S. 815, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988), in a plurality opinion, the United States Supreme Court determined that the imposition of the death penalty against a defendant who was under the age of 16 at the time of the offense violated the cruel and unusual punishment clause of the Eighth Amendment. Justice Stevens, author of the plurality opinion, grounded this holding on the current "evolving standards of decency." Thompson, 487 U.S. at 823, 108 S.Ct. at 2691, 101 L.Ed.2d at 710.
In a concurring opinion, Justice O'Connor joined the result, but on the narrower ground that defendants below the age of 16 when the offense was committed "may not be executed under the authority of a capital punishment statute that specifies no minimum age at which the commission of a capital crime can lead to the offender's *1174 execution." Thompson, 487 U.S. at 857, 108 S.Ct. at 2711, 101 L.Ed.2d at 734.
The United States Supreme Court remanded Jones' case to this Court for consideration in light of Thompson presumably for the purpose of applying these principles to a person whose mental age, not biological age, has been demonstrated to be below age 16. Jones was found by two court-appointed experts to be mentally retarded with an I.Q. between 61 and 66, placing him in the lowest 1% of society in terms of intelligence, with the functional equivalent of a 7 year old. Jones v. State, 517 So.2d 1295, 1301 (Miss. 1987).
However, since the decision in Thompson, the United States Supreme Court has decided the case of Penry v. Lynaugh, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), which deals specifically with the issue of the applicability of the death penalty to mentally retarded persons under the Eighth Amendment. This decision is more to the point in deciding Jones than is Thompson.
Penry, mentally handicapped and functioning at the age of a 6 1/2 year old, was convicted of capital murder under the Texas statute and sentenced to death. After the United States Supreme Court denied certiorari on direct review, the federal district court and court of appeals upheld the death sentence in habeas corpus proceedings. Thereafter, the United States Supreme Court granted certiorari on two issues: (1) whether Penry was sentenced to death in violation of the Eighth Amendment because the jury was not instructed that it could consider and give effect to his mitigating evidence in imposing its sentence; (2) whether the Eighth Amendment categorically prohibits Penry's execution because he is mentally retarded.
As to the first issue, the Court decided that, under the Texas sentencing scheme in death penalty cases, the absence of instructions informing the jury that it could consider and give effect to the mitigating evidence of Penry's mental retardation and abused background by declining to impose the death penalty deprived the jury of a vehicle for expressing its response to that evidence in rendering its sentencing decision. 492 U.S. at 328, 109 S.Ct. at 2952, 106 L.Ed.2d at 284.
By contrast, Miss. Code Ann. § 99-19-101(6) (Supp. 1991) sets forth statutory mitigating circumstances which the sentencing jury in death penalty cases must consider. Included are § 99-19-101(6)(b), "the offense was committed while the defendant was under the influence of extreme mental or emotional disturbance," and § 99-19-101(6)(f), "the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired." Also pertinent is § 99-19-101(6)(g), "the age of the defendant at the time of the crime." Significantly, "age" is not defined as biological age specifically, leaving it open for a jury to be informed as to the mental "age" of a particular defendant if relevant, as well as biological age.
Not only was the jury in Jones' case instructed as to these three mitigating factors, but also these three mitigating factors were argued to the jury, the point being specifically made that Jones' mental age at the time of the offense was 7 or 8. Jones, 517 So.2d at 1301. Therefore, unlike Penry, Jones' jury was provided a vehicle, through this State's sentencing scheme in death penalty cases, appropriate jury instructions, and through appropriate argument, to consider and give effect to the mitigating evidence of his mental retardation in rendering its sentencing decision. As to this issue, the concerns of the Penry decision have been met.
As to whether or not the Eighth Amendment categorically prohibits the execution of mentally retarded persons, the United States Supreme Court held that there is no such prohibition as a matter of federal constitutional law so long as the jury has a vehicle for considering a defendant's mental retardation in its sentencing deliberations:
In sum, mental retardation is a factor that may well lessen a defendant's culpability for a capital offense. But we cannot conclude today that the Eighth *1175 Amendment precludes the execution of any mentally retarded person of Penry's ability convicted of a capital offense simply by virtue of their mental retardation alone. So long as sentencers can consider and give effect to mitigating evidence of mental retardation in imposing sentence, an individualized determination of whether `death is the appropriate punishment' can be made in each particular case.
492 U.S. at 340, 109 S.Ct. at 2958, 106 L.Ed.2d at 292.
As a matter of state law, this Court has previously addressed whether or not a mentally retarded person is subject to the death penalty under Mississippi law. In Neal v. State, 451 So.2d 743 (Miss. 1984), this Court stated:
Neal in effect argues that the State of Mississippi is constitutionally proscribed from imposition of the sentence of death upon one suffering from mental disabilities and impairment. That is simply not the law. The legislature of this State has within its lawful powers declared that mental or emotional disturbance or cognitive or volitional deficiencies may be mitigating circumstances. Miss. Code Ann. Section 99-19-101(2), (6). But in doing this, our legislature has provided that mental disability is only one mitigating circumstance, to be considered together with other mitigating circumstances and to be balanced and weighed against the aggravating circumstances, according to the procedure elaborated in Sections 99-19-101 et seq., generally. If its discretion is guided by otherwise proper instructions, the jury has been empowered by law to find that the aggravating circumstance or circumstances proved outweigh this (and other) mitigating circumstances and that the defendant should suffer the penalty of death.
Id. at 762. Thus, statutory provisions now in place in this state's death penalty sentencing scheme provide an adequate vehicle for a jury to "consider and give effect to mitigating evidence of mental retardation in imposing sentence" such that "an individualized determination of whether `death is the appropriate punishment' can be made in each particular case." Penry, 492 U.S. at 340, 109 S.Ct. at 2958, 106 L.Ed.2d at 292. Jones' jury was so instructed and so informed. This Court need not impose a life sentence on Jones simply on the basis of his mental retardation under either federal constitutional or state law considerations.
Interestingly, the United States Supreme Court discussed the argument that "mental age" ought be equated with "biological age" such that execution of juveniles and those of a mental age equivalent to a juvenile should be prohibited. The Court rejected this "mental age" argument saying, "Such a rule should not be adopted today." 492 U.S. at 339, 109 S.Ct. at 2957, 106 L.Ed.2d at 291. The decision in Penry answers, as a matter of federal constitutional law, the Supreme Court's apparent concerns in Jones in light of Thompson.

CONCLUSION
Jones' conviction of capital murder shall remain undisturbed. This case is remanded to the Circuit Court of Harrison County to impanel another sentencing jury to determine punishment consistent with this opinion.
REMANDED TO HARRISON COUNTY CIRCUIT COURT FOR RESENTENCING.
DAN M. LEE, P.J., and PRATHER, ROBERTSON, BANKS and McRAE, JJ., concur.
ROY NOBLE LEE, C.J., dissents with separate written opinion.
HAWKINS, P.J., concurs in part and dissents in part with separate written opinion joined in part by SULLIVAN, J.
PITTMAN, J., not participating.
ROY NOBLE LEE, Chief Justice, dissenting:
The United States Supreme Court remanded the Gregory Montecarlo Jones case to this Court for a further weighing process and held that we may do so without re-submitting the case to a jury. Therefore, I dissent from the majority opinion holding that we have no authority to reweigh *1176 or uphold a death sentence and I adopt my dissenting opinions in Clemons v. State, 593 So.2d 1004 (Miss. 1992) and Shell v. State, 595 So.2d 1323 (Miss. 1992) on that issue.
With reference to the "especially heinous, atrocious or cruel" aggravating circumstance and the limiting instruction necessary to qualify it, as I have written previously, while in proper cases, it passes muster, I suggest to trial judges and prosecutors that it should not be requested, or granted, except under almost certain circumstances. The probability of reversible error is too great. See Ladner v. State, 584 So.2d 743, 764 (Miss. 1991); Berry v. State, 575 So.2d 1, 5 (Miss. 1990) (Roy Noble Lee, Dissenting).
HAWKINS, Presiding Justice, concurring in part and dissenting in part:
In Edwards v. State, 441 So.2d 84, 92 (Miss. 1983), we noted:
Appellate review is ordinarily limited to well defined and circumscribed guidelines. In death penalty cases we have additional duties imposed upon us by statute stretching beyond the usual review.
One of these duties is to consider the punishment, and we have the authority to set the death sentence aside, and remand the case of modification of the sentence for life.
This duty is imposed upon us by Miss. Code Ann. § 99-19-105 (Supp. 1991), which reads in pertinent part:
§ 99-19-105. Review by Supreme Court of Imposition of Death Penalty.
(5) ... In addition to its authority regarding correction of errors, the court, with regard to review of death sentences, shall be authorized to:
(a) Affirm the sentence of death, or
(b) Set the sentence aside and remand the case for modification of the sentence to imprisonment for life.
(6) The sentence review shall be in addition to direct appeal... .
Edwards was a mental patient at our state hospital diagnosed as having long suffered from schizophrenia of a paranoid type. Nevertheless he had been released from the hospital, and following his release he shot and killed a police officer.
Pursuant to the authority of Miss. Code Ann. § 99-19-105(5), by a plurality opinion, this Court in Edwards set his death sentence aside and remanded the case to the circuit court for modification of the sentence to imprisonment for life.
The slaying for which Gregory Montecarlo Jones stood trial occurred January 19, 1981. His appeal was first heard by this Court in 1984, when we reversed. Jones v. State, 461 So.2d 686 (Miss. 1984) (Jones I).
Jones stood trial a second time, and we affirmed in 1987. Jones v. State, 517 So.2d 1295 (Miss. 1987) (Jones II). This did not end this matter in State courts, however. Pursuant to mandate from the United States Supreme Court, today, a decade later than when Jones first stood trial, we again remand this case to the circuit court of Harrison County for another sentencing trial before a jury.
Because Jones was shown to be grossly impaired mentally, scoring in the range of 60-70 on an intelligence quotient test, I urged in Jones I for this Court to apply Miss. Code Ann. § 99-19-105 and remand for sentence to life imprisonment. Jones v. State, 461 So.2d 686, 710 (Hawkins, J., dissenting). There is just as much justification for setting aside the imposition of the death penalty in this case as in Edwards. Put another way, what is there about this case which prevents us from treating Jones' sentence the same as we did Edwards?
Fulfilling the responsibility imposed upon us by Miss. Code Ann. § 99-19-105(5) is by no means an easy task. The enormous capacity for discernment required in making such a decision, however, does not entitle us to simply ignore this responsibility the Legislature has assigned to this Court. Nor does this Court have the reputation for shirking the difficult questions.
In this case we should squarely address the question of whether or not Jones should receive the benefit of Miss. Code Ann. § 99-19-105(5). If so, why, and if *1177 not, why not? I have expressed my view why he should.
I would set aside the death sentence and remand this case to the circuit court for modification of sentence to imprisonment for life. Also, Neal v. State, 451 So.2d 743, 764-65 (Miss. 1984).
SULLIVAN, J., concurs in part.